UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.   CASE NO. 6:13-cr-304-Orl-228GJK

WILLIAM A. WHITE

**UNITED STATES' RESPONSE IN OPPOSITION TO
MOTION FOR JUDGMENT OF ACQUITTAL**

The United States opposes the defendant's Motion for Judgment of Acquittal. Doc. 76. The United States respectfully requests this Court to deny the defendant's Motion, and while reserving all arguments not asserted herein, states the following in support thereof:

**I.  Background**

On December 11, 2013, a federal Grand Jury issued an Indictment charging the defendant with violating five counts of 18 U.S.C. § 875(b), and one count of 18 U.S.C. § 1028(a)(7). Doc. 1. On September 12, 2014, a jury found the defendant guilty as to each count set forth in the Indictment. Doc. 69. The defendant has filed a Motion for Judgment of Acquittal. Doc. 76. The defendant's arguments hold no merit, and the Motion should respectfully be denied.

The evidence presented during trial showed that while on Federal Supervised Release in the Western District of Virginia the defendant fled to Mexico in early May 2012. Between May 19, 2012, and May 20, 2012, the

defendant used an anonymous email address nslf_helterskelter@hotmail.com to email and post graphic threats directed towards Federal Bureau of Investigation Task Force Agent Kelly J. Boaz, State Attorney Lawson Lamar, and Florida Circuit Judge Walter G. Komanski. The emails and website posts contained violent threats to kidnap, rape with knives, and behead Lawson Lamar's minor grandchildren unless the public officials dismissed state charges pending against members of the American Front, a white supremacist organization, in the Middle District of Florida. In the threats, the defendant listed the names and home addresses of the public officials, the names of Lawson Lamar's grandchildren, and identified other family members related to the public officials.

Despite taking steps to hide his online identity, evidence from the defendant's Facebook account overwhelmingly established that he was the source of the threats. Using Facebook, the defendant requested information about the prosecutor, Judge, and investigator in the American Front case. Afterwards, the defendant posted pictures of Lawson Lamar's family on his Facebook account, reposted the threats against the public officials, and commented about the American Front case. Moreover, the defendant made references on his Facebook account to Helter Skelter, Charles Manson, Joe Tomassi, National Socialist Liberation Front, pigs, and violent song lyrics that were strikingly similar to the writing style found in the threats. In addition, the threats mentioned the defendant by name and talked about prior threats made to Judge James C. Turk, who was the federal judge presiding over the defendant's

supervised release in Virginia. The defendant also used Facebook to discuss his use of TOR to anonymize his IP address and True Crypt to encrypt his hard drive.

Based upon the evidence presented at trial, a jury convicted the defendant on all six counts in the Indictment.

## II. Memorandum of Law

In considering the defendant's motion for acquittal pursuant to Fed. R. Crim. P. 29, this Court must view the evidence in the light most favorable to the United States. See United States v. Hernandez, 433 F.3d 1328, 1335 (11th Cir. 2005). "The district court must accept all reasonable inferences tending to support the Government's case. 'Likewise, any conflicts in the evidence are to be resolved in the Government's favor.'" U.S. v. Barfield, 999 F.2d 1520, 1522 (11th Cir. 1993) (quoting U.S. v. Taylor, 972 F.2d 1247, 1250 (11th Cir. 1992)) (citation omitted). "The relevant question . . . is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." U.S. v. Goodlow, 389 Fed. App'x 961, 967 (11th Cir. 2010) (citing U.S. v. Suba, 132 F.3d 662, 671 (11th Cir. 1998)) (quotation omitted).

The defendant argues there was insufficient proof as a matter of law that the defendant sent or posted the threats on May 19, 2012 and May 20, 2012. The defendant further contends there was insufficient evidence that the defendant could benefit from the dismissal of the charges against the American

Front in Counts One through Five. The defendant also claims that the United States must show he had the subjective intent to threaten Federal Bureau of Investigation Task Force Agent Kelly J. Boaz, State Attorney Lawson Lamar, and Florida Circuit Judge Walter G. Komanski. Furthermore, the defendant purports that venue was improper in Counts Four and Five. Finally, the defendant claims that the use of 18 U.S.C. § 1028(a)(7) under the instant facts renders the statute unconstitutional. The defendant's arguments are meritless, and the Motion for Judgment of Acquittal should be denied.

### A. The Defendants Motion for Judgment of Acquittal as to Counts One Through Five Should be Denied

1. <u>The Evidence Established the Defendant Sent and Posted the Threats</u>

The evidence presented during trial conclusively showed that the Defendant sent and posted the threats directed towards the victims. Considering the evidence in a light most favorable to the government, any rational trier of fact could find the defendant was the source of the threats. Indeed, the defendant's Facebook account provided a substantial amount of evidence that he transmitted the threats using the anonymous email address. For instance, the defendant solicited information on his Facebook account about the prosecutor, judge, and investigator involved in the American Front case. Soon thereafter, he posted the threat sent from the nslf_helterskelter@hotmail.com account to his own Facebook account. He also posted pictures of the victims and their families on his Facebook page around the same time as the threats. The threats also included unique language and referenced distinct terms that the defendant had

4

previously written about on Facebook. During the trial, the evidence showed that the defendant used terms in both the threats and on his Facebook that demonstrated he sent the anonymous emails, including repeated references to Helter Skelter, National Socialist Liberation Front, "Political Terror," Joe Tomassi, Charles Manson, F*** with knives, pigs, writing on walls with blood, and the American Front case. These were common themes on the defendant's Facebook account that were reflected in the threats.

The defendant also referenced himself in some of the threats along with prior threats made to James C. Turk, the federal judge overseeing his supervised release. The United States presented evidence during trial that the defendant had previously sent threats to officials in the Western District of Virginia, which included Judge Turk. Moreover, the evidence illustrated how the defendant attempted to hide his online identity by using an anonymous IP address and encrypted his hard drive to avoid being detected by the federal government. This overwhelming evidence demonstrated that the defendant sent and posted the threats in Counts One through Five in the Indictment, and the defendant's motion should be denied.

2. The United States is Not Required to Prove that the Defendant Would or Could Benefit from the Extortion, or that the Defendant had the Subjective Intent to Threaten the Victims

The defendant incorrectly claims that the United States must demonstrate that he would or could benefit from the dismissal of charges or release of members of the American Front. As set forth in the Eleventh Circuit Jury Pattern

5

Instructions, and as the Jury was clearly instructed during the trial, in order to prove 18 U.S.C. § 875(b), the United States must prove beyond a reasonable doubt:

(1) the Defendant knowingly sent a message in interstate or foreign commerce containing a true threat to kidnap any person or to injure the person of another; and

(2) the Defendant did so with the intent to extort money or something else of value to the Defendant.

See Eleventh Cir. Pattern J. Instructions, 30.2; Doc. 68. The Eleventh Circuit Jury Pattern Instructions state, and the Jury was also instructed that, "[t]o act with 'intent to extort' means to act with the purpose of obtaining money or something of value from someone who consents because of fear or because of the wrongful use of actual or threatened force or violence." Id.

The defendant asserts that the United States must also prove that he would or could have benefited from the extortion. This is not an element of the offense. Considering the evidence in a light most favorable to the government, the United States proved beyond a reasonable doubt that the defendant intended to extort State Attorney Lawson Lamar, TFA Kelly Boaz, and Judge Walter Komanski. The evidence established that the defendant sent emails to these public officials threatening to kidnap, rape, and behead Lawson Lamar's grandchildren unless they dropped charges against members of the American Front case. The defendant made these violent threats for the purpose of having the case against the American Front dismissed and the American Front members released from jail. Based upon the evidence presented at trial, the dismissal of

6

the American Front case and release of white supremacists from jail was clearly something of value to the defendant. See U.S. v. Nilsen, 967 F.2d 539, 543 (11th Cir. 1992) (holding that "the phrase 'thing of value' is a clearly defined term that includes intangible objectives, and that the evidence was sufficient to establish that [the defendant] mailed a threatening letter with intent to extort a thing of value from Ferullo-her testimony linking him to two of the state bank robbery charges pending against him."). Thus, the United States established beyond a reasonable doubt that the defendant intended to extort State Attorney Lawson Lamar, TFA Kelly Boaz, and Judge Walter Komanski.

The defendant also asserts that the United States must prove the Defendant subjectively intended to threaten the victims. The Eleventh Circuit has rejected this argument, and held that "when the Government shows that 'a reasonable person would perceive the threat as real,' a true threat may be punished . . . ." See U.S. v. Martinez, 736 F.3d 981, 988 (11th Cir. 2013) (explaining that "[k]nowingly transmitting the threat makes the act criminal – not the specific intent to carry it out or the specific intent to cause fear in another."); U.S. v. Castillo, 564 Fed. App'x 500, 504 (11th Cir. 2014) (affirming district court's denial of Rule 29 motion, and stating that "there is no requirement that [the defendant] actually intended to kill the President or even have intended to threaten him in order to sustain the conviction"). Alternatively, the evidence showed that the defendant did subjectively intend to threaten the victims. The defendant made graphic and violent threats to kidnap, rape with knives, and kill

7

Lawson Lamar's grandchildren unless the American Front case was dismissed. The content of the threats in conjunction with the other evidence presented at trial illustrated the defendant's subjective intent to threaten the public officials and their families. Thus, the United States proved beyond a reasonable doubt each element of 18 U.S.C. § 875(b).

  3. <u>The Middle District of Florida is the Proper Venue</u>

  First, the defendant's Motion for Judgment of Acquittal based upon improper venue is untimely. See <u>U.S. v. Roberts</u>, 308 F.3d 1147, 1151-52 (11th Cir. 2002) (explaining that a defendant has the right to be tried in the district in which the offense was committed, but "[a] defendant may waive such right however, by failing to raise a venue objection prior to trial.") (citing <u>U.S. v. Dabbs</u>, 134 F.3d 1071, 1078 (11th Cir. 1998)). Here, the defendant challenged venue for the first time at the close of the United States' case in chief. Consequently, the defendant waived a venue challenge. See <u>U.S. v. Dabbs</u>, 134 F.3d 1071, 1078 (11th Cir. 1998) (holding that appellants "waived their venue challenge when they failed to raise it in the district court," and stating '[b]ecause defendants did not file a motion for a change of venue prior to trial, they waived any objection to venue and may not raise it for the first time on appeal.'") (quoting <u>U.S. v. Bustos-Guzman</u>, 685 F.2d 1278, 1280 (11th Cir. 1982)). Accordingly, the defendant's arguments should be denied.

Notwithstanding the defendant's waiver of a venue challenge, his arguments fail on the merits. Title 18, United States Code, Section 3237(a) states the following:

> Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.
>
> Any offense involving the use of the mails, transportation in interstate or foreign commerce, or the importation of an object or person into the United States is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of prosecuted in any district from, through, or into which such commerce, mail matter, or imported object or person moves.

The evidence presented during trial showed by a preponderance of the evidence that the offenses occurred in the Middle District of Florida. See U.S. v. Burroughs, 830 F.2d 1574, 1580 (11th Cir. 1987) (explaining that venue must be proven by a preponderance of the evidence).

As to Counts Four and Five, this Court previously denied the defendant's motion for acquittal and found there was proper venue because the defendant sought to impede court proceedings in the Middle District of Florida. In U.S. v. Kibler, the Fourth Circuit affirmed a district court's finding that venue was proper in the trial district where the judicial proceedings would be impeded despite the threat occurring in a different district. 667 F.2d 452, 453 (4th Cir. 1982). There, the defendant made threats against another person in the District of Columbia, but the matter surrounding the threat was pending in the United States District Court for the District of Maryland. Id. The Fourth Circuit affirmed the district

court's findings that venue was proper in Maryland where the judicial proceeding the defendant sought to affect was pending. Id. at 455.

Similarly, in the instant case, the defendant posted the threats on the Anti-Defamation League's website, which is located in New York, and the Southern Poverty Law Center's website, which is located in Alabama. In doing so, the defendant directed the threats at public officials and their families located in this trial district for the purpose of impeding the prosecution of the American Front case, which was pending in Orange County in the Middle District of Florida. Given the holding in Kibler, venue is proper in this trial district. Id. Furthermore, the threats posted on the Anti-Defamation League and Southern Poverty Law Center websites were directly targeted at public officials and family members who worked and resided in the Middle District of Florida. Accordingly, venue was properly alleged in the Middle District of Florida, and the defendant's venue arguments should be denied.

### B. The United States Proved the Elements of 18 U.S.C. § 1028(a)(7) Beyond a Reasonable Doubt and the Statute is Constitutional

1. The United States Proved Each Element of 18 U.S.C. § 1028(a)(7) Beyond a Reasonable Doubt

Viewing the evidence in a light most favorable to the government, the United States established beyond a reasonable doubt each element of 18 U.S.C. § 1028(a)(7). The Jury received a clear instruction on the law, and this Court instructed the Jury:

> The Defendant can be found guilty of this crime only if all the following facts are proved beyond a reasonable doubt:

(1) the Defendant knowingly transferred, possessed, or used, without lawful authority, a means of identification of another person;

(2) the Defendant did so with the intent to commit, or in connection with, any unlawful activity that constitutes a violation of federal or state law; and

(3) the transfer, possession, or use of the means of identification was in interstate or foreign commerce.

A "means of identification" includes any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual.

See Doc. 68.

As to the first element, the evidence presented at trial established that the defendant sent a series of emails and posts containing threats as described above. In the threats, the defendant listed the names of Kelly Boaz, Lawson Lamar, and Walter G. Komanski, and their respective home addresses. The defendant claims that this information does not constitute "means of identification." 18 U.S.C. § 1028(d)(7) defines "means of identification," in relevant part, as:

> any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including any—

(A) name, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number; [. . . .]

As expressly stated in the statute, any "name" that identifies "a specific individual" constitutes a "means of identification." Id. In the threats, the defendant listed the pubic officials' home addresses in conjunction with their names, which was intended and did identify them as specific individuals. As such, this information constitutes "means of identification."

The defendant also incorrectly claims that, because the defendant allegedly obtained the names and addresses from the public domain, he could not have violated this statute. To the contrary, a person can possess or use information "without lawful authority" regardless of how the information was initially obtained. See U.S. v. Joseph, 567 Fed. App'x 844, 846 (11th Cir. 2014) (stating that "[t]he government need not show that a defendant stole another person's means of identification in order to establish that he used it without lawful authority"). "The government can establish that a defendant used another's means of identification 'without lawful authority' by showing that the defendant used it without permission." Id. "Or the government can establish that a defendant used another's means of identification without lawful authority by showing that, even if he took the means of identification with permission, he used it for an unlawful or illegitimate purpose." Id.

Here, the United States established that regardless of how the defendant obtained the names and addresses of the victims, he subsequently used that information for an unlawful and illegitimate purpose, which was to carry out his threats. See U.S. v. Ozuna-Cabrera, 663 F.3d 496, 499 (1st Cir. 2011)

("[R]egardless of how the means of identification is actually obtained, if its subsequent use breaks the law–specifically, during and in relation to the commission of a crime enumerated in subsection (c)-it is violative of § 1028A(a)(1)."). Indeed, the defendant's use of names and addresses identifying specific individuals made the emails and posts objectively more threatening and constituted violations of Federal law. As such, the evidence established the defendant knowingly possessed or used the victims' means of identification without lawful authority notwithstanding how he obtained the information. Thus, the United States proved the first element beyond a reasonable doubt.

As to the second and third element, the United States proved beyond a reasonable doubt that the defendant possessed or used the means of identification in connection with his repeated violations of 18 U.S.C. § 875(b), which was an unlawful activity and violation of Federal law. Moreover, the defendant was located in Mexico and sent and posted the threats to Florida, Alabama, and New York. The United States also elicited testimony that the servers for Microsoft, which serviced Hotmail account users, were located outside of Florida. As a result, the United States showed that the defendant used the names and addresses of specific individuals, without lawful authority, in connection with a federal crime that was in interstate or foreign commerce. Accordingly, the United States proved this offense beyond a reasonable doubt.

The defendant further contends that there was insufficient evidence that the means of identification was used to commit fraud. In raising this argument,

the defendant seeks to inject an additional element that is not found in 18 U.S.C. § 1028(a)(7). Although the United States acknowledges the thrust of 18 U.S.C. § 1028 pertains to activity related to fraud, 18 U.S.C. § 1028(a)(7) does not require the United States to prove the defendant committed a fraud related offense with the identifying information. See U.S. v. Ozuna-Cabrera, 663 F.3d 496, 500 (1st Cir. 2011) (comparing § 1028(a)(7) to § 1028A and rejecting a defendant's argument that § 1028A required theft of one's identity despite § 1028A being an identity theft statute).

For support, this Court should first look to the clear and unambiguous language set forth in the statute, which states it is a violation to knowingly use or possess means of identification, without lawful authority, in connection with "any unlawful activity that constitutes a violation of Federal law . . . ." 18 U.S.C. § 1028(a)(7). "As with any question of statutory interpretation, [courts] begin by examining the text of the statute to determine whether its meaning is clear." U.S. v. Zheng, 306 F.3d 1080, 1085 (11th Cir. 2002) (quoting Lewis v. Barnhart, 285 F.3d 1329, 1331 (11th Cir. 2002)). "[T]he plain meaning of the statute controls unless the language is ambiguous or leads to absurd results." United States v. Hoffman-Vaile, 568 F.3d 1335, 1343 (11th Cir. 2009) (quoting U.S. v. McLymont, 45 F.3d 400, 401 (11th Cir. 1995) (per curiam)) (citation omitted). "When the text of a statute is plain, however, [a court] need not concern [itself] with contrary intent or purpose revealed by the legislative history." U.S. v. Hunt, 526 F.3d 739, 744 (11th Cir. 2008).

Here, 18 U.S.C. § 1028(a)(7) is clear and unambiguous. The statute expressly defines "means of identification," and casts a wide but clearly defined net of unlawful activity that may be prosecuted in connection with this offense. Given the clarity of the statute, this Court should refrain from delving into legislative history as the defendant suggests. Rather, the defendant's actions clearly fall within the unambiguous confines of the statute.

The related statutes also support that the United States is not required to prove any fraud or identity theft. "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." U.S. v. Saunders, 318 F.3d 1257, 1264 (11th Cir. 2003) (citing Russello v. U.S., 464 U.S. 16, 23 (1983)) (quoting U.S. v. Wong Kim Bo, 472 F.2d 720, 722 (5th Cir. 1972) (per curiam)). In contrast to § 1028(a)(7), 18 U.S.C. § 1028A narrows the offenses that apply to this statute by specifically enumerating the crimes in § 1028A(c)(1)-(11). Notably, Section 1028(a)(7) does not limit the related criminal activity it covers, and may relate to any unlawful activity that constitutes a violation of Federal law. Hence, Section 1028(a)(7) is not limited to specific unlawful activity such as fraud or identity theft.

Furthermore, the statute expressly contemplated related offenses that did not involve fraudulent use of identifying information. In the penalties section, it sets forth enhanced penalties if the offense is facilitated to commit a drug trafficking crime or crime of violence, as in this case. See 18 U.S.C. §

1028(b)(3)(A)-(B). Moreover, in reviewing 18 U.S.C. § 1029, those offenses specifically require the United States to prove that the defendant acted "with the intent to defraud." See 18 U.S.C. § 1029(a)(1)-(10). More closely related, 18 U.S.C. § 1028(a)(4) requires the United States to prove that the defendant knowingly possessed certain documents or features with the intent that the documents of features be used to "defraud the United States." This Court can draw from such statutory distinctions that 18 U.S.C. § 1028(a)(7) covers a large scope of offenses that includes fraud and identity theft, but is not limited to such unlawful activity.

Section 1028(a)(7) does not state or even infer that the means of identification must be used or possessed in relation to fraudulent activity. Rather, the means of identification must knowingly be used or possessed, without lawful authority, in interstate or foreign commerce, and in connection with a violation of Federal law. Considering the evidence in a light most favorable to the government, the United States proved these elements beyond a reasonable doubt.

    2. 18 U.S.C. § 1028(a)(7) is Not Unconstitutional

It appears that the defendant challenges 18 U.S.C. § 1028(a)(7) under the First Amendment, and claims that this statute chills his right to free speech. See Def's Motion at 15. "In certain narrowly drawn categories, the Government may permissibly restrict speech on the basis of content." U.S. v. Martinez, 736 F.3d 981, 984 (11th Cir. 2013) (citing U.S. v. Stevens, 559 U.S. 460, 1584 (2010)).

"These categories of unprotected speech do not require case-by-case balancing because the harms they impose "so overwhelmingly outweigh[]" any First Amendment concerns that the 'balance of competing interests is clearly struck.'" Martinez, 736 F.3d at 984 (quoting New York v. Ferber, 458 U.S. 747, 763-64 (1982)). "True threats" are one category of unprotected speech. Martinez, 736 F.3d at 984.

The defendant's arguments wholly ignore that 18 U.S.C. § 1028(a)(7) requires proof that the use of the "means of identification" must be possessed or used "in connection with, any unlawful activity that constitutes a violation of Federal Law, or that constitutes a felony under any applicable State or local law." 18 U.S.C. § 1028(a)(7). Using a "means of identification" in the context of the instant facts cannot reasonably be considered protected speech under the First Amendment. Indeed, the use of the victims' names and addresses in this case were instrumental in carrying out his violent and graphic threats that were nothing less than "true threats," and not protected speech.

Courts have upheld 18 U.S.C. § 875(b) and (c) as constitutionally sound and do not violate the First Amendment where, as here, the defendant makes "true threats." See U.S. v. Martinez, 736 F.3d 981, 987 (11th Cir. 2013) (holding that "when the Government shows that 'a reasonable person would perceive the threat as real,' a true threat may be punished and 'any concern about the risk of unduly chilling protected speech has been answered.'") (quoting U.S. v. Jeffries, 692 F.3d 473, 478 (6th Cir. 2012)). As the evidence showed at trial, the

defendant used victims' names and respective addresses in carrying out the threats. Undoubtedly, the use of the victims' names associated with their home addresses made the threats objectively more real and constituted "true threats." The defendant cannot reasonably argue that using their names and home addresses in this context was protected free speech.

It appears the defendant also claims that the statute is unconstitutionally overbroad. "Under the First Amendment, a statute is overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" Martinez, 736 F.3d at 988 (quoting Stevens, 130 S.Ct. at 1587) (internal quotation marks omitted). After construing the statute to determine its meaning, courts determine whether the statute "criminalizes a substantial amount of protected expressive activity." Id. (quoting U.S. v. Williams, 553 U.S. 285, 297 (2008)). Here, the statute only encompasses possession or use of "means of identification" when someone has the information without lawful authority, and it is connected with some form of criminal activity. Similar to the "true threat" analysis, 18 U.S.C. § 1028(a)(7) does not encompass a substantial amount of protected expressive activity because it applies only where the means of identification is possessed or used in conjunction with an unlawful activity that constitutes a violation of Federal law or a felony under any applicable State or local law. As such, this statute does not violate protected speech under the First Amendment that would render the statute unconstitutional.

Thus, defendant's arguments are meritless, and the evidence established the defendant committed each element of this offense beyond a reasonable doubt.

### III. Conclusion

THEREFORE, the United States requests that this Court deny defendant's motion.

Respectfully submitted,

A. LEE BENTLEY, III
United States Attorney

By: *s/ James D. Mandolfo*
James D. Mandolfo
Assistant United States Attorney
Fl. Bar. No. 96044
400 W. Washington Street, Suite 3100
Orlando, Florida 32801
Telephone: (407) 648-7500
Facsimile: (407) 648-7643
E-mail: james.mandolfo@usdoj.gov

U.S. v. WILLIAM A. WHITE          Case No. 6:13-cr-304-Orl-228GJK

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 26, 2014, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Larry Henderson, Esq.

*s/ James D. Mandolfo*
James D. Mandolfo
Assistant United States Attorney
Fl. Bar No. 96044
400 W. Washington Street, Suite 3100
Orlando, Florida 32801
Telephone: (407) 648-7500
Facsimile:  (407) 648-7643
E-mail:     james.mandolfo@usdoj.gov